IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


KEVIN COOK,

      Plaintiff,

v.                                 Civil Action No. 5:11CV6
                                           (STAMP)
ROBERT M. ROBINSON,
ROBINSON AUTOMOTIVE GROUP, INC. and
BOB ROBINSON CHEVROLET-OLDSMOBILE-
CADILLAC, INC.,

      Defendants.


**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I.  Procedural History

On January 7, 2011, the plaintiff in the above-styled civil action filed a declaratory judgment action requesting that the legal rights of the parties with regard to the covenant not to compete contained in the stock purchase agreement ("SPA") dated August 4, 2006 associated with the plaintiff's purchase of stock in Robinson Automotive Group ("RAG"), be established and that it be determined that the covenant is unlawful and unenforceable.[1]  The

---

[1]The covenant not to compete states:

During the course of Cook's association with Buyer [Robert M. Robinson] and Employer [RAG], Cook has become aware of and familiar with Buyer's and Employer's methods of operation and certain proprietary and confidential information.  Cook agrees not to employ the business expertise that he has acquired by virtue of his association with Buyer and Employer in direct competition with them as set forth herein.  In consideration of the mutual promises contained herein and the sum of Twenty Thousand Dollars ($20,000.00) paid to Cook by Employer,

plaintiff also alleges that the defendants intentionally acted to prevent him from being employed by Straub Automotive ("Straub"), where he has accepted a position as general manager for sales but is not yet employed as a result of the defendants' threats of litigation.

On January 25, 2011, the plaintiff filed a motion for a preliminary injunction and a request for an expedited evidentiary hearing. His request was granted, and this Court held a hearing on the motion for a preliminary injunction on January 28, 2011. At this hearing, the plaintiff offered evidence that he will suffer significant and irreparable financial harm unless this Court grants his motion for a preliminary injunction, permitting him to work at Straub while the declaratory judgment action is pending and prohibiting the defendants from taking action against Straub. After the hearing, the defendants filed an affidavit of Robert Robinson, in which he states that if Cook is permitted to work at Straub, the Robinson dealership will lost car sales and revenues in

---

exclusively for this covenant not to compete, the receipt of which is hereby acknowledged, Cook agrees that for a period of ten (10) years following the date of this Agreement, he shall not directly or indirectly own or engage in the retail sale of new or used motor vehicles for, or be a Director, officer or employee of any new or used motor vehicle dealership in Ohio County, West Virginia, or otherwise compete with Buyer and/or Employer within a radius of fifty (50) miles of Wheeling, Ohio County, West Virginia.

(Def.s' Resp. to Mot. for Prelim. Inj. Ex. 2.)

an amount difficult to determine. At the request of the plaintiff's counsel and finding that further briefing would be beneficial, at the conclusion of the hearing this Court directed the parties to file additional memoranda addressing the motion for a preliminary injunction.[2]

Pursuant to this Court's January 31, 2011 order, the defendants filed the affidavit of Robert Robinson and the plaintiff filed a memorandum in support of his motion for a preliminary injunction, to which the defendants responded. Pending before this Court is the plaintiff's motion for a preliminary injunction, which this Court denies for the reasons set forth below.

## II.  Facts[3]

The plaintiff has been employed in the automotive sales industry since 1984 and began working as the general sales manager for the Bob Robinson Chevrolet, Oldsmobile and Cadillac Dealership in March 1998. As general sales manager, Cook's work involved managerial responsibilities over purchasing, sales, advertising and budgetary issues, but according to the plaintiff, he was not given

---

[2]The Court also gave the parties the opportunity to submit a stipulation by February 4, 2011 regarding any harm to defendant Robert Robinson, but the parties have not submitted such a stipulation.

[3]For purposes of deciding this motion for a preliminary injunction, this Court, for the most part, adopts the facts as set forth in the plaintiff's complaint and as stipulated by the parties. Other facts were developed by testimony at the hearing on the motion for a preliminary injunction.

any specialized training, nor was he privy to any trade secrets unique to the defendants' business. After working at the Robinson dealership for some time, Cook was permitted to purchase 15% of the shares of stock of Bob Robinson Chevrolet-Oldsmobile-Cadillac, Inc. ("COC"). In September 2004, the defendants acquired Welty Buick, Inc. ("Welty") and Cook's 15% stock interest in COC was converted to a 30% stock interest in the Welty business.[4] Cook then began to manage the newly-acquired Welty dealership.

In 2006, Cook offered to purchase Welty. When Robinson refused, Cook requested the redemption of his shares pursuant to the terms of the applicable stock purchase agreement. According to a letter from Robert Robinson dated July 24, 2006, Robinson purchased Cook's stock in RAG for the amount of $380,000.00. The letter also provides that Cook will be subject to a ten-year non-compete agreement covering a fifty mile radius from Wheeling, West Virginia for an additional $20,000.00 and that he will be repaid his loan outstanding to the company for $54,200.00. The total amount that Cook received, according to the letter, is $454,200.00.[5] At the time of the redemption of the shares,

_____

[4]This conversion was accomplished by way of a stock purchase agreement dated August 22, 2004. This particular agreement was not offered as an exhibit, and at the preliminary injunction hearing, Cook stated that he was never given a copy of that agreement. (Prelim. Inj. Hr'g Tr. 39-40, Jan. 28, 2011.)

[5]This Court notes the discrepancy between the stock purchase price listed in the July 24, 2006 letter ($380,000.00), and the stock purchase price listed in the agreement itself ($373,136.00).

Robinson allegedly advised Cook that he was attributing a portion of the previously agreed to stock purchase price to a ten-year covenant not to compete. (Compl. ¶ 23.)

Later in 2006, Cook purchased the Dan Johnston Chevrolet dealership ("DJC") located in Jeannette, Pennsylvania. When the financial crisis of 2008-2009 occurred, Cook was forced to close DJC, but was able to find employment as a sales manager at another dealership, Smail Automotive ("Smail") in Greensburg, Pennsylvania.

In December 2010, while employed by Smail, Cook met with representatives of Straub regarding his taking the position of general manager for sales at Straub. Before accepting that job, Cook called Robinson to secure his approval. After advising Robinson of Straub's offer and of the fact that it had been four to five years since he last worked at Robinson, Cook argues that Robinson agreed to allow Cook to accept the sales manager position with Straub. Robinson denies that he ever excused or relieved Cook from the obligations of the non-compete agreement. After his first conversation with Robinson, Cook promptly resigned from his employment at Smail and accepted the offer from Straub. Cook was to start working for Straub on January 3, 2011.

---

The parties have presented no evidence as to the exact amount that Cook received for his stock in RAG, but at the January 28, 2011 hearing, Cook stated that he never objected to the breakdown listed in the July 24, 2006 letter. (Prelim. Inj. Hr'g Tr. 57, Jan. 28, 2011.) No matter what the exact stock purchase price was, this Court finds that there appears to be additional consideration for the covenant not to compete.

The day after Cook accepted the Straub offer of employment, Robinson called Cook and advised him that he intended to enforce the restrictive covenant and that Cook could not accept employment with Straub. Cook advised Robinson of the financially devastating effect this would have on his family, but according to Cook, Robinson refused to honor his prior agreement and advised that he would deny ever having told Cook he could accept the Straub offer of employment. Robinson, however, argues that the second telephone conversation, during which he indicated that he would enforce the covenant, occurred after he had the opportunity to review the SPA and confirmed that the non-compete clause would apply for ten years. As of the date of the hearing, Cook remained unemployed.

## III. <u>Applicable Law</u>

The United States Court of Appeals for the Fourth Circuit has recognized that "preliminary injunctions are extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." <u>MicroStrategy Inc. v. Motorola, Inc.</u>, 245 F.3d 335, 339 (4th Cir. 2001) (quoting <u>Direx Israel, Ltd. v. Breakthrough Med. Corp.</u>, 952 F.2d 802, 816 (4th Cir. 1992)) (internal quotations omitted).

Until 2008, the Fourth Circuit followed the four-factor <u>Blackwelder</u> test in determining whether a preliminary injunction should be granted. <u>See</u> <u>Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.</u>, 550 F.2d 189 (4th Cir. 1977). These factors were: "(1)

the likelihood of irreparable harm to the plaintiff if the preliminary injunction is not granted; (2) the likelihood of harm to the defendant if the preliminary injunction is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest." Id. at 193. In light of the Supreme Court's ruling in Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365 (2008), the Fourth Circuit has abandoned the Blackwelder test in favor of the stricter approach in Winter, which requires that the plaintiff clearly demonstrate that he will likely succeed on the merits. See The Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342, 346-47 (4th Cir. 2009).

In The Real Truth About Obama, Inc., the Fourth Circuit set forth the equitable factors that a district court must consider when determining whether a temporary restraining order or preliminary injunction should issue. The four factors that the plaintiff must establish to obtain a preliminary injunction under this test are:

> (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

Id. at 346 (citing Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374 (2008)).

The issuance of a preliminary injunction is committed to the sound discretion of the district court. Conservation Council of

North Carolina v. Costanzo, 505 F.2d 498, 502 (4th Cir. 1974). If a preliminary injunction is granted, the order granting the same must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail -- and not by referring to the complaint or any other document -- the act or acts restrained or required." See Fed. R. Civ. P. 65(d).

## IV. Discussion

The plaintiff seeks a preliminary injunction permitting him to be employed by Straub while the declaratory judgment action is pending. In support of this motion, the plaintiff argues that he will suffer significant irreparable financial harm if he is not permitted to work at Straub while the declaratory judgment action is pending. In his memorandum in support of the motion for a preliminary injunction, the plaintiff argues that he has met his burden of establishing the four factors required to obtain injunctive relief. The defendants counter that the plaintiff has failed to establish the elements set forth in The Real Truth About Obama, Inc. and thus, the motion for a preliminary injunction should be denied. This Court addresses each of the four factors in turn.

### A. Likelihood of Success on the Merits

West Virginia law recognizes two types of covenants not to compete: covenants not to compete ancillary to sales and covenants not to compete ancillary to employment agreements. See Weaver v.

Ritchie, 478 S.E.2d 363, 366-67 (W. Va. 1996). Both types of covenants involve restraints on trade, and this similarity allows for the application of a common legal standard to determine the validity and enforceability of the covenant. This standard, known as the "Rule of Reason," "requires weighing all the facts and circumstances of a case to decide whether a restriction unreasonably restraints competition." Id. at 367 (quoting Horner v. Graves, 7 Bing. 735, 135 Eng. Rep. 284 (C.P. 1831) ("whether the restraint is such only as to afford a fair protection to the interests of the party in favour of whom it is given, and not so large as to interfere with the interests of the public.")). Thus, the first step in this Court's analysis is to determine whether the covenant not to compete is enforceable. See Reddy v. Community Health Foundation of Man, 298 S.E.2d 906, 915 (W. Va. 1982).

The plaintiff first argues that the covenant lacks consideration and was otherwise secured under duress. Specifically, the plaintiff contends that the $20,000.00 the defendants attribute to the covenant not to compete was taken from the amount previously agreed upon by the parties for the purchase of stock under the SPA. In other words, defendant Robinson was allegedly already contractually obligated to pay the plaintiff $20,000.00 for the purchase of the stock; therefore, this amount cannot also be counted as consideration for the covenant not to compete. The plaintiff further argues that because the covenant

not to compete was secured under circumstances which deprived him of a fair ability to negotiate, it is void. In support of this contention, the plaintiff states that the first time he was made aware of the covenant not to compete was in a July 24, 2006 letter from Robinson to General Motors ("GM") confirming that the plaintiff would have the requisite capital to proceed with the purchase of the dealership in Pennsylvania.

In response, the defendants argue that Cook was not under duress when he signed the SPA. According to the defendants, Cook had at least eleven days to consider the terms of the covenant not to compete, and as a sophisticated businessperson familiar with the practices of the automobile industry, he could have easily chosen not to sign the SPA. Cook's signature on the SPA, the defendants argue, indicates his acknowledgment of the recited consideration for the covenant not to compete: "mutual promises contained [in the Agreement] and the sum of Twenty Thousand Dollars ($20,000.00) paid to Cook." Moreover, the defendants highlight the fact that Cook received a separate check for the $20,000.00 which was marked "non compete per Agreement." (Def.s' Resp. to Mot. for Prelim. Inj. Ex. 3.)

Regarding his lack of consideration and duress claims, this Court finds that the plaintiff is unable to show a likelihood of success on the merits. There is no evidence to indicate that Cook was under duress when he signed the SPA. Rather, Cook himself

10

testified that he freely and voluntarily signed the agreement in order to obtain the necessary capital to purchase the dealership in Pennsylvania. Cook, who was part owner of the Robinson dealership for approximately eight years, has not shown that he was deprived of the ability to negotiate a fair deal. In fact, Cook admitted that he negotiated a higher stock purchase price -- his shares were sold to Robinson for the same price that his brother had recently paid for shares in Welty stock. (Prelim. Inj. Hr'g Tr. 53, Jan. 28, 2011.) Additionally, given the fact that the SPA specifically states that the $20,000.00 was paid to Cook "exclusively for [the] covenant not to compete," this Court finds the plaintiff's lack of consideration argument is not sufficiently supported by the facts as developed at this time. Robert Robinson's letter of July 24, 2006 further supports the argument that Cook received an additional $20,000.00 as consideration for the covenant not to compete.

The plaintiff also asserts an estoppel argument. Specifically, the plaintiff claims that the covenant not to compete is unenforceable in light of the December 6, 2010 conversation between the plaintiff and Bob Robinson, during which Bob Robinson allegedly agreed to waive the covenant not to compete. The defendants' response points to the language of the SPA, which requires any and all modifications to be in writing. According to the defendants, oral modification of the contract was not possible, and even if it

was, the plaintiff has failed to show clear and positive evidence that he and Bob Robinson agreed to the alteration.

This Court finds that the plaintiff has not satisfied his burden of proof with regard to the estoppel argument. The parties vehemently dispute the nature and content of the December 6, 2010 conversation between Cook and Bob Robinson. Given the contradictory assertions regarding the conversation and the language of the SPA itself, the plaintiff has failed to show a likelihood of success on the merits regarding the estoppel claim.

The next step in analyzing the validity and enforceability of the covenant not to compete requires that this Court determine the type of the agreement containing the covenant not to compete. "Because the motivation and purpose of the restrictive covenant embraced in a sales agreement are substantially different from a covenant in an employment agreement, the rule of reason is applied with lesser scrutiny in a sales contract than the covenant ancillary to an employment agreement." <u>Weaver</u>, 478 S.E.2d at 367. A less stringent test of reasonableness is applied to a restrictive covenant ancillary to the sale of a business because "[a] restriction imposed upon the seller of a business affords a person the freedom to sell something that has been acquired by virtue of their labor, skill or talent at the highest possible price." <u>Id.</u> But a restriction imposed upon a person following the termination of his employment places a restriction upon the person's freedom to

work.  Id.  Public policy favors covenants not to compete ancillary to the sale of a business, which enhances the "vendibility of a business or profession because the seller, by promising not to compete with the buyer, is able to receive the highest possible price for the property that is sold and the buyer is willing to pay a premium for the business or profession knowing it is protected by not running the risk of losing what was purchased should the seller become a competitor."  Id. at 368.

In this case, the plaintiff argues that the covenant not to compete is ancillary to an employment agreement and thus cannot be enforced under West Virginia law.  The defendants, however, argue that the covenant not to compete is ancillary to the sale of a business -- Robinson's purchase of Cook's stock in RAG.  This Court agrees with the plaintiff's position.  Based upon the information presented in the parties' pleadings and testimony at the hearing on the motion for a preliminary injunction, this Court finds that the stricter test of reasonableness would apply to the covenant not to compete in this case as it is ancillary to an employment agreement.

This is not a case in which the buyer, Robinson, needed a covenant not to compete in order to prevent the seller, Cook, from "recapturing and utilizing, by competition, the good will of the very business which he transferred for value."  Payment Alliance Intern., Inc. v. Ferreira, 530 F. Supp. 2d 477, 483 (S.D.N.Y. 2007) (quoting Purchasing Assocs. v. Weitz, 196 N.E.2d 245 (N.Y. 1963)).

Instead, this Court believes that, more likely than not, Robinson sought to include a covenant not to compete in the SPA in order to "prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of employment." Weaver, 478 S.E.2d at 368. Robinson was not purchasing goodwill from Cook or requiring him to refrain from competition in order to ensure that Robinson received the full value of that goodwill. See id. Instead, Robinson was seeking a promise by Cook not to act in a certain way after terminating his employment. Accordingly, this Court finds that the employment agreement analysis should be applied to this covenant not to compete.

However, even though this restrictive covenant is subjected to a higher standard for determining reasonableness, this Court is not convinced that the plaintiff has met his burden of showing a likelihood of success on the merits. A restrictive covenant ancillary to an employment agreement is reasonable only if it: (1) is no greater than required for the protection of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public. Reddy, 298 S.E.2d at 911; see also Household Finance Corp. v. Sutton, 43 S.E.2d 144, 149 (W. Va. 1947) (holding that a restriction in a contract of employment that the employee should not engage in any business within the city wherein the employer was located within a year after termination was valid

14

as reasonably necessary for protection of the employer's business and it imposed no undue hardship on the employee).

The plaintiff argues that the covenant's terms are overly broad because they restrict him from working in any capacity in the automotive sales industry anywhere within fifty miles of Robinson for ten years. However, the plaintiff has not presented evidence to clearly establish that the ten-year covenant and fifty-mile radius is unreasonable according to the <u>Reddy</u> factors. <u>See</u> <u>Pancake Realty Co. v. Harber</u>, 73 S.E.2d 438, 441 (W. Va. 1952) (In determining the reasonableness of restrictive covenants in employment contracts, the element of time, the extent of the area, and conditions of parties are to be considered, not only as to immediate parties, but as to the public generally, depending upon the facts and circumstances of the particular case). In fact, the <u>Weaver</u> court, applying the less strict standard for covenants ancillary to the sale of a business, found that a restrictive covenant lasting fifteen years and fifty miles in scope was not unreasonable.[6]

At the hearing on the motion for a preliminary injunction, Cook first argues that he did not acquire any proprietary or confidential

_____

[6]The <u>Weaver</u> court also noted that in reality, the fifteen-year covenant not to compete would endure for only ten years because the seller in that case was employed by the buyers for the first five years of the non-compete period. <u>Weaver</u>, 478 S.E.2d at n.6. Similarly, in this case, the covenant not to compete would endure for approximately five and a half more years, since the SPA was executed on August 4, 2006.

information from Robinson that would justify the protection of the covenant not to compete, but he later admits to receiving confidential financial information. (Prelim. Inj. Hr'g Tr. 21; 105-06, Jan. 28, 2011.) The Supreme Court of Appeals of West Virginia, agreeing with the reasoning of a court in another jurisdiction, has held that a restrictive covenant contained in an employment contract is not enforceable inasmuch as the employer failed to demonstrate a "protectible interest" in the nature of a trade secret or customer list. Helms Boys, Inc. v. Brady, 297 S.E.2d 840, 843 (W. Va. 1982) (citing Slisz v. Munzenreider Corp., 411 N.E.2d 700 (Ind. App. 1980)). At the hearing, Cook acknowledged in this testimony that he had obtained some confidential information about the Robinson business and the SPA also states that he has such confidential information. (Prelim. Inj. Hr'g Tr. 106, Jan. 28, 2011.) Therefore, for purposes of deciding the motion for a preliminary injunction, there is sufficient evidence that a protectible interest exists. This Court finds that additional discovery may be necessary to definitively establish, for declaratory judgment purposes, whether a protectible interest exists.

The plaintiff also has yet to show how the covenant not to compete imposed an undue hardship on him. After leaving Welty, Cook was able to find work at two different dealerships outside of the scope of the covenant: DJC and Smail. The covenant not to compete cannot suddenly impose an undue hardship simply because Cook now

desires to work at a dealership within a fifty mile radius of Robinson.

Finally, the plaintiff has failed to show that the restrictive covenant is injurious to the public. Although the covenant does limit Cook's ability to seek employment near Robinson, it does not prohibit him from seeking employment elsewhere. Given the plaintiff's extensive employment history in the automobile sales industry throughout the country, it seems possible that the plaintiff could obtain another similar position outside the reach of the covenant, meaning that the public interest in freedom of employment is not harmed. The plaintiff has failed, at this point, to meet his burden of showing that the covenant not to compete is unreasonable under <u>Reddy</u>.

B.   <u>Irreparable Harm in the Absence of Preliminary Relief</u>[7]

The plaintiff claims that if the preliminary injunction is not granted, he will suffer irreparable harm in the form of being denied the opportunity to work at Straub. Because Cook resigned from his position at Smail after speaking to Robert Robinson and then accepting the job at Straub, he is currently unemployed, as Straub refuses to allow him to begin work until this matter is resolved. According to the plaintiff, the general manager position offered by

---

[7]In their response to the motion for a preliminary injunction, the defendants argue that the granting of this injunction would cause them substantial financial harm. Because the likelihood of harm to the defendants is not one of the four factors set forth in <u>The Real Truth About Obama</u>, this Court does not consider it.

Straub is of a type and at a salary which the plaintiff will be unlikely to again obtain. Moreover, Cook faces the possibility of the Straub position being filled during the pendency of this litigation. In light of his unemployment and monthly financial commitments, if a preliminary injunction is not issued, the plaintiff claims he will face significant financial damage.

In response, the defendants argue that because Cook has made no effort to seek other employment, any irreparable harm he suffers has been self-inflicted. The defendants also point to Cook's testimony, during which he indicated that he had been experiencing financial difficulties since he was employed in Pennsylvania.

In an attempt to define irreparable harm, various courts have found that the injury "must be both certain and great," and that it must not be "merely serious or substantial." Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985); A.O. Smith Corp. v. FTC, 530 F.2d 515, 525 (3d Cir. 1976). "Cases have also noted that irreparable harm is often suffered when 'the injury can[not] be adequately atoned for in money,' or when 'the district court cannot remedy [the injury] following a final determination on the merits.'" Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1250 (10th Cir. 2001) (quoting A.O. Smith Corp., 530 F.2d at 525; American Hosp. Ass'n v. Harris, 625 F.2d 1328, 1331 (7th Cir. 1980)).

The Fourth Circuit has explained, "the required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'" <u>Direx</u>, 952 F.2d at 812 (citing <u>ECRI v. McGraw-Hill, Inc.</u>, 809 F.2d 223, 226 (3rd Cir. 1987) ("Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury'")); <u>see also</u> <u>In re Microsoft Corporation Antitrust Litigation</u>, 333 F.3d 517 (4th Cir. 2003). This Court finds that the plaintiff has failed to meet his burden of showing irreparable harm in the absence of preliminary relief. Although Cook may risk losing the Straub position that had been offered to him, he has not shown definitively that he will face irreparable financial harm if a preliminary injunction is not issued. Other courts have held that lost income, opportunities, and professional relationships are not irreparable injuries. <u>See Aluminum Workers Intern. Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.</u>, 696 F.2d 437, 445 (6th Cir. 1982); <u>Ferrell v. Durham Technical Institute</u>, 569 F. Supp. 16, 20 (M.D. N.C. 1983). The general manager position at Straub provides a competitive annual salary and bonuses, but the plaintiff has not yet begun to receive this income, and he will not necessarily be irreparably harmed if he never receives this income -- he will simply be in the same position he is now. Further, the plaintiff could potentially obtain a new job with similar compensation in the meantime. This Court finds that any potential financial harm the

plaintiff may suffer as a result of never starting the job at Straub simply does not rise to the level of irreparable harm in order to justify the issuance of a preliminary injunction.

C.   Balance of Equities

In his memorandum in support of the motion for a preliminary injunction, the plaintiff argues that the balance of equities tips in his favor.  Because the only harm claimed by the defendants if the injunction were to issue is the loss of some car sales and revenues, the plaintiff argues that the defendants have failed to identify any proprietary information that requires protection. Moreover, the plaintiff has testified that he is unaware of any proprietary information and that any knowledge he has regarding the business is not confidential to Robinson.  The plaintiff contends that any potential harm claimed by the defendants can be protected by the requirement of a bond, but the plaintiff's harm can only be prevented by the issuance of an injunction.

Again, the defendants respond that the plaintiff has not sustained his burden of clearly establishing that the balance of equities tips in his favor.  The SPA states that the plaintiff obtained proprietary and confidential information while owning part of RAG, and the defendants argue that the plaintiff cannot now be allowed to breach this legal agreement simply because his circumstances have changed.  The defendants also contend that through advertising, Cook became the "face" of the company and he

is identified as such throughout the Ohio Valley. Thus, the defendants argue that the equities fall on the side of enforcement of the covenant not to compete.

This Court first notes that while the SPA states that the plaintiff "has become aware of and familiar with [Robinson's] methods of operation and certain proprietary and confidential information," further discovery on this issue may reveal otherwise. However, because Cook himself acknowledged by his signature on the SPA and by his testimony at the hearing that he had obtained confidential information, this Court finds that the balance of equities does not favor an injunction. Assuming the plaintiff did have access to confidential information, which he admitted to at the hearing on the motion for a preliminary injunction, if this Court were to grant an injunction, the defendants could potentially lose information regarding valuable trade secrets, goodwill, business reputation, and methods of business operation. The plaintiff, on the other hand, would only face the potential loss of a job opportunity -- one that he has acquired arguably because of skills, at least some of which he obtained while working at Robinson. For these reasons, this Court finds that the plaintiff has not met his burden of showing that the balance of equities tips in his favor.

D. <u>Public Interest</u>

Lastly, the plaintiff argues that a preliminary injunction will promote West Virginia public policy, which disfavors covenants not

to compete and their restraint on the opportunity of employment. According to the plaintiff, the public interest is served by the plaintiff being employed and returning his family to the Ohio Valley. The defendants counter that Cook's occupation as a sales manager is not one that is crucial or critical to the public interest and that if another person were to obtain the position at Straub, the public interest would not be harmed. "Public interest favors the protection of confidential business information and the enforcement of valid contracts." AVT, Inc. v. Juszczyk, No. 5:09CV119, 2010 WL 2156542, at *9 (W.D. N.C. Aug. 10, 2010). "[I]t is also in the public's interest to preserve the status quo and protect the sanctity of contracts." Moller-Maersk A/S v. Escrub Systems, Inc., No. 1:07cv1276, 2007 WL 4562827, at *4 (E.D. Va. Dec. 21, 2007). If the Court were to grant a preliminary injunction in this case, it would render moot the only protection currently in place preventing the sharing of Robinson's confidential information. Even though the question of whether Cook was exposed to proprietary information cannot be finally determined without further discovery, this Court relies on the assertions in the SPA agreement, which was agreed to by both parties. Allowing the plaintiff to work at Straub, despite the fact that he agreed not to employ the business expertise that he acquired in direct competition with Robinson, is harmful to the public's ability to rely on contractual agreements. Such a precedent could chill the willingness of parties to enter

into covenants not to compete. For the reasons stated above, this Court finds that the plaintiff has not met his burden of establishing the four factors that would warrant the granting of a preliminary injunction.[8]

## V.   Conclusion

For the reasons stated above, the plaintiff's motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     March 8, 2011


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE

---

[8]This Court reminds the parties that pursuant to the first order and notice regarding discovery and scheduling entered on January 27, 2011, they are instructed to conduct an initial planning meeting on or before March 23, 2011 and must file a meeting report and proposed discovery plan on or before March 30, 2011.