IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


KEVIN COOK,

          Plaintiff,

v.                                         Civil Action No. 5:11CV6
                                                          (STAMP)
ROBERT M. ROBINSON,
ROBINSON AUTOMOTIVE GROUP, INC. and
BOB ROBINSON CHEVROLET-OLDSMOBILE-
CADILLAC, INC.,

          Defendants.


             MEMORANDUM OPINION AND ORDER
     GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
        AND GRANTING IN PART AND DENYING IN PART
        DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]

                 I.   Procedural History

     On January 7, 2011, the plaintiff in the above-styled civil

action filed a declaratory judgment action requesting that the

legal rights of the parties with regard to the covenant not to

compete contained in the August 4, 2006 stock purchase agreement

("SPA") associated with the plaintiff's purchase of stock in

Robinson Automotive Group ("RAG") be established and that it be

determined that the covenant is unlawful and unenforceable.[2]  The

─────────────────────────

     [1]This memorandum opinion and order confirms the tentative
rulings set forth in the undersigned judge's letter to counsel
dated September 28, 2011.

     [2]The covenant not to compete states:

     During the course of Cook's association with Buyer
     [Robert M. Robinson] and Employer [RAG], Cook has become
     aware of and familiar with Buyer's and Employer's methods
     of operation and certain proprietary and confidential

plaintiff also alleges that the defendants intentionally acted to prevent him from being employed by Straub Automotive ("Straub"), where he has accepted a position as general manager for sales but is not yet employed as a result of this litigation.

On January 25, 2011, the plaintiff filed a motion for a preliminary injunction and a request for an expedited evidentiary hearing. His request was granted, and this Court held a hearing on the motion for a preliminary injunction on January 28, 2011. After the parties submitted additional memoranda addressing the motion for a preliminary injunction, this Court entered a memorandum opinion and order denying the plaintiff's motion for a preliminary injunction.[3]

---

information. Cook agrees not to employ the business expertise that he has acquired by virtue of his association with Buyer and Employer in direct competition with them as set forth herein. In consideration of the mutual promises contained herein and the sum of Twenty Thousand Dollars ($20,000.00) paid to Cook by Employer, exclusively for this covenant not to compete, the receipt of which is hereby acknowledged, Cook agrees that for a period of ten (10) years following the date of this Agreement, he shall not directly or indirectly own or engage in the retail sale of new or used motor vehicles for, or be a Director, officer or employee of any new or used motor vehicle dealership in Ohio County, West Virginia, or otherwise compete with Buyer and/or Employer within a radius of fifty (50) miles of Wheeling, Ohio County, West Virginia.

Defs.' Mot. for Summ. J. Ex. M.

[3]This ruling was made following the standards set forth in The Real Truth About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342 (4th Cir. 2009), based upon the record made at that time.

On May 26, 2011, after the entry of a scheduling order and while the parties were in the midst of conducting discovery, the defendants filed a motion for summary judgment. The plaintiff filed objections to the motion for summary judgment, in which he argued that the defendants' motion was premature as it was filed before the plaintiff had an opportunity to conduct discovery. This Court agreed, and on June 14, 2011, entered an order denying the defendants' motion for summary judgment as premature.[4]

Upon the completion of discovery, both parties filed motions for summary judgment. These cross-motions for summary judgment have been fully briefed and are ripe for review. For the reasons set forth below, this Court grants the plaintiff's motion for summary judgment, and grants in part and denies in part the defendants' motion for summary judgment.

## II. Facts[5]

Defendant Robert M. Robinson ("Robinson") is the principal stockholder of defendant Bob Robinson Chevrolet-Oldsmobile-Cadillac, Inc. ("Bob Robinson COC"). The plaintiff, Kevin Cook

---

[4]This Court notes that the plaintiff's objection to the defendants' first motion for summary judgment also argued that the defendants' filings had exceeded the allowable page limit set forth in Local Rule of Civil Procedure 7.02. In an order dated August 17, 2011, this Court overruled the plaintiff's objection.

[5]Because the evidence in a summary judgment motion is to be considered in the light most favorable to the party opposing the motion, and because both parties in this case have filed opposing motions for summary judgment, this Court considers the undisputed facts as set forth by both parties.

("Cook"), has been employed in the automotive sales industry since 1984, and he began working as the general sales manager for the Bob Robinson COC dealership in 1998. As the general sales manager, Cook's duties included managing the dealership, sales and marketing of new and used vehicles, maintaining staff and sales personnel, advertising, and inventory control.

After working at the Robinson dealership for some time, Cook purchased five percent of the shares of stock in Bob Robinson COC, pursuant to a stock purchase agreement dated June 1, 1998. This agreement provided that should Cook's employment with Bob Robinson COC be terminated, either voluntarily or involuntarily, Cook was to first tender and offer all of his stock to Robinson at a price to be reached pursuant to an agreed-upon formula set forth in the SPA. Defs.' Mot. for Summ. J. Ex. J. Later, Cook increased his stock ownership and became a fifteen percent shareholder in Bob Robinson COC.

In September 2004, the defendants acquired Welty Buick, Inc. ("Welty"), located directly across the street from Bob Robinson COC. Following the acquisition, the plaintiff became the general manager of RAG, the entity that was created by the purchase of Welty, and which was operated under the Welty name. At this time, pursuant to a stock purchase agreement dated August 22, 2004, Cook

sold his fifteen percent interest in Bob Robinson COC and purchased a thirty percent interest in RAG.[6]

In 2006, Cook approached Robinson and asked to buy Robinson's shares of Welty in order to become the owner of the entire business. After Robinson told Cook that the business was not for sale, Cook decided to terminate his employment with RAG so that he could purchase his own dealership. Pursuant to a stock purchase agreement dated August 4, 2006, Cook sold his thirty percent interest and stock in RAG to Robinson. Defs.' Mot. for Summ. J. Ex. M. According to a letter from Robinson dated July 24, 2006, the total amount of compensation to be paid to Cook was $454,200.00. Defs.' Mot. for Summ. J. Ex. L. The August 6, 2006 SPA states that the total price of the stock is $373,136.00. The parties ultimately reached their agreement as to the value of the shares of stock based upon the formula set forth in the SPA and the amount the plaintiff's brother had recently been paid by Robinson for his five percent interest in RAG. In addition to, or possibly as a part of the valuation of the shares of stock, the plaintiff received a payment of $20,000.00, which was earmarked as payment for the covenant not to compete.[7] The August 4, 2006 SPA by which

---

[6]The plaintiff does not have a copy of the August 22, 2004 SPA, and the defendants are also unable to locate this document.

[7]Because the parties were unable to produce the 2004 SPA, this Court is unable to definitively determine whether the $20,000.00 was paid as additional consideration for the covenant not to compete. Instead, the $20,000.00 could be a fraction of the stock

Cook sold his thirty percent interest and stock in RAG to Robinson contains the fifty-mile, ten-year covenant not to compete.

In August 2006, Cook purchased and began operating the Dan Johnston Chevrolet dealership in Jeannette, Pennsylvania. Around this time, Cook moved to Greensburg, Pennsylvania and purchased a home there. When the financial crisis of 2008-2009 occurred, Cook was forced to close his dealership, but he was able to find employment as a sales manager at another dealership, Smail Automotive ("Smail"), in Greensburg, Pennsylvania.

In November 2010, Cook was approached by a representative of Straub about becoming the general manager at Straub. After further discussion, on December 5, 2010, Straub offered Cook the position. On December 6, 2010, Cook called Robinson and told him about his opportunity to work at Straub. According to Cook, Robinson approved of his acceptance of the position at Straub, and Cook relied on Robinson's statement of approval when he resigned from his employment at Smail. On December 7, 2010, Robinson called Cook and advised him that he would enforce the covenant not to compete. While Cook contends that Robinson inexplicably changed his mind, Robinson denies that he ever excused or relieved Cook from the obligations of the non-compete agreement. As of the filing of the motions for summary judgment, Cook remained unemployed.

---

redemption price that was simply applied to the covenant not to compete.

6

### III.  Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>      (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
>      (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718-19 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256.  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a

finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

The central question presented in both motions for summary judgment is whether the covenant not to compete contained in the August 4, 2006 SPA is enforceable. Therefore, this Court addresses

the enforceability of the covenant not to compete first, before turning to the other issues raised in the motions for summary judgment.

A.   Enforceability of the Covenant Not to Compete

In his motion for summary judgment, the plaintiff argues that the covenant not to compete contained in the August 4, 2006 SPA is not enforceable.   In support of this contention, the plaintiff states: (1) the type of knowledge and information acquired by the plaintiff does not support the necessity of a covenant not to compete; (2) the covenant not to compete is unreasonable on its face; and (3) the defendants are not able to establish the requisite protectable interest to justify a ten-year covenant not to compete.

In their response, filed on September 15, 2011, the defendants argue that the covenant not to compete is valid, binding, and enforceable because: (1) it is ancillary to the sale of Cook's stock and ownership; (2) it is supported by consideration; (3) it is necessary to safeguard the defendants' legitimate business interests; and (4) the ten-year duration is reasonable.   On September 22, 2011, the plaintiff filed a reply stating that the defendants cannot argue that the covenant at issue is ancillary to the sale of a business because this Court already found that the covenant is ancillary to an employment contract.

The defendants' motion for summary judgment presents similar arguments. With regard to the covenant not to compete, the defendants assert: (1) it was required to protect the defendants' legitimate business interests; (2) it does not impose an undue hardship upon the plaintiff; (3) it is not injurious to the public; and (4) the plaintiff agreed to it. In his response, filed on September 15, 2011, the plaintiff argues: (1) the defendants have failed to meet their burden of establishing the existence of a protectable interest that warrants a ten-year covenant; (2) there exists a genuine issue of material fact as to whether an oral modification or waiver of the covenant occurred; and (3) the behavior of the defendants warrants the submission of punitive damages to the jury. On September 22, 2011, the defendants filed a reply in which they argue that the plaintiff has not sufficiently carried his burden to oppose summary judgment.

Before delving into the question of enforceability of the covenant, this Court first addresses whether the covenant is ancillary to an employment contract or ancillary to the sale of a business. Based upon the information presented in the parties' initial pleadings and the testimony at the hearing on the motion for a preliminary injunction, this Court previously found that this covenant is ancillary to an employment agreement. Mem. Op. and Order Den. Pl.'s Mot. for Prelim. Inj. 13-14. Because the covenant was meant to "prevent competitive use, for a time, of information

or relationships which pertain peculiarly to the employer and which the employee acquired in the course of employment[,]" this Court determined that the stricter employment agreement analysis was applicable in this case. Weaver v. Ritchie, 478 S.E.2d 363, 368 (W. Va. 1996).

Despite this finding, the defendants continue to argue in their motion for summary judgment that the less stringent test for covenants ancillary to the sale of a business applies in this case because the covenant was inextricably tied to Robinson's purchase of Cook's shares. According to the defendants, a covenant signed by an individual who is both an employee and a shareholder as part of a sale of his stock is subject to lesser scrutiny than a covenant that is ancillary to only an employment agreement. Defs.' Mem. in Support of Mot. for Summ. J. 7-8. In response, the plaintiff states that this Court correctly characterized the covenant as ancillary to an employment contract because the execution of the August 4, 2006 SPA and the covenant was specifically correlated to the terminations of Cook's employment rather than to the sale of a business. Pl.'s Mem. in Resp. to Mot. for Summ. J. 10.

This Court reaffirms that the covenant in this case is ancillary to an employment agreement because the motions for summary judgment present no new evidence that would support a finding that this covenant is ancillary to the sale of a business.

These two types of covenants achieve very different goals. A restriction imposed on the seller of a business ensures that the seller receives the highest possible price for the business and that the buyer will not risk losing what was purchased should the seller become a competitor. Weaver, 478 S.E.2d at 368 (citing Morgan's Home Equip. Corp. v. Martucci, 136 A.2d 838 (Pa. 1957)). The objective of a covenant not to compete ancillary to an employment contract, on the other hand, "prevent[s] the competitive use, for a defined period of time, of information, skills or relationships which are distinctive to the employer and which the employee acquired . . . in the course of employment." Id.

In this case, the covenant not to compete was included in the August 4, 2006 SPA in which Cook sold back to Robinson his ownership interest in RAG. The purpose of the inclusion of the covenant in the SPA was not to ensure that Cook could obtain the highest price for his shares by precluding himself from entering into competition with Robinson. In reality, Cook was simply selling back to Robinson a small piece of Robinson's own business. The covenant was included in the SPA to prevent Cook from competing unfairly against Robinson. Thus, the covenant must be analyzed under the stricter test because it is ancillary to an employment contract. See also McGough v. Nalco Co., 496 F. Supp. 2d 729, 749 (N.D. W. Va. 2007) ("Generally, a covenant signed prior to,

contemporaneous with, or any time during employment is ancillary to employment.").

As this Court previously explained in the memorandum opinion and order denying the plaintiff's motion for a preliminary injunction, the first step in this Court's analysis of the enforceability of the covenant not to compete requires the application of the rule of reason. <u>See</u> <u>Reddy v. Cmty. Health Found. of Man</u>, 298 S.E.2d 906, 915 (W. Va. 1982). As the <u>Reddy</u> court stated, "the very enforceability of the covenant will stand or fall by the rule of reason." <u>Id.</u> at 912. Application of the rule of reason involves three inquiries that require the court to look to the interests of the employer, the interests of the employee, and the interests of society at large. <u>Id.</u> Specifically, a covenant is reasonable only if it: (1) is no greater than is required for the protection of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public. <u>Id.</u> A threshold analysis leads this Court to find that the covenant not to compete in the August 4, 2006 SPA is unreasonable on its face with respect to duration.

"An employee covenant is unreasonable on its face if its time or area limitations are excessively broad, or where the covenant appears designed to intimidate employees rather than to protect the employer's business[.]" <u>Reddy</u>, 298 S.E.2d at syl. pt. 2. The ten-year time limitation imposed by the covenant in this case is overly

broad and not tailored to protect Robinson's business.[8] Looking to West Virginia case law, this Court notes that Cook's covenant not to compete is significantly longer than those discussed in other cases. See Wood v. Acordia of West Virginia, Inc., 618 S.E.2d 415 (W. Va. 2005) (discussing a two-year covenant); Huntington Eye Associates, Inc. v. LoCascio, 553 S.E.2d 773 (W. Va. 2001) (discussing a two-year covenant); Voorhees v. Guyan Mach. Co., 446 S.E.2d 672 (W. Va. 1994) (discussing a two-year covenant); Appalachian Laboratories, Inc. v. Bostic, 359 S.E.2d 614 (W. Va. 1987) (discussing a five-year covenant); Torbett v. Wheeling Dollar Sav. & Trust Co., 314 S.E.2d 166 (W. Va. 1983) (discussing a two-year covenant); PEMCO Corp. v. Rose, 257 S.E.2d 885 (W. Va. 1979) (discussing a two-year covenant). But see Weaver v. Ritchie, 478 S.E.2d 363 (W. Va. 1996) (discussing a fifteen-year covenant not to compete ancillary to the sale of a business). This history is significant in that it highlights the fact that the covenant not to compete in this case is much more restrictive than others held enforceable by the Supreme Court of Appeals of West Virginia.

In addition to comparing the length of Cook's covenant not to compete to other West Virginia covenants, this Court also considers the fact that this covenant exists in the context of the automotive

---

[8]In their pleadings, the parties focus on the ten-year time limitation of the covenant not to compete rather than the fifty mile geographic limitation. This Court also focuses its analysis on the ten-year time limitation.

sales industry.  The plaintiff argues that there is considerable sharing of information in this industry through participation in NADA groups and through shared consultants.  Notably, the defendants' financial consultant, David Wadsworth, conceded that he provides consulting services to other dealerships in the Wheeling area that do not sell General Motors vehicles.  Mr. Wadsworth stated that in his opinion, only dealerships who sell General Motors vehicles are direct competitors of Robinson COC.  Wadsworth Dep. 48:7-25, Aug. 4, 2011.  Because so much information regarding the operation of a dealership is public knowledge, it cannot be considered a trade secret worthy of the protection of a ten-year covenant not to compete.  <u>See</u> Wharton Dep. 20:1-24; 21:1-7, July 28, 2011 (stating that when managers leave and take information out into the market, there is no longer any need to protect that information); Welty Dep. 10:1-9, Sept. 1, 2011 (stating that he has no issue with Cook working at Straub).  Simply stated, there is no need to protect information that is already available to competitors through other sources.

This Court finds that the <u>Weaver</u> case, in which the Supreme Court of Appeals of West Virginia held that a fifteen-year covenant was reasonable, is easily distinguishable from this case.  First, the covenant in <u>Weaver</u> was ancillary to the sale of a business -- an optometric practice.  Next, the <u>Weaver</u> court tested the reasonableness of the covenant by considering: (1) the length of

time the purchaser required to recoup his investment; (2) the period of time upon which the bank relied when providing financing to complete the purchase; and (3) the percentage of business generated from within the geographic limit of the covenant. _Weaver_, 478 S.E.2d at 370-71. The _Weaver_ court found that the covenant's duration of fifteen years was necessary to protect the legitimate interests of the purchaser. Because _Weaver_ dealt with the sale of a business, testing the reasonableness of the covenant in _Weaver_ involved considerations that are not at play in this case.

This Court finds that this case is more akin to _Helms Boys, Inc. v. Brady_, in which the Supreme Court of Appeals of West Virginia refused to enforce a five-year covenant not to compete. _Helms Boys, Inc. v. Brady_, 297 S.E.2d 840, 843 (W. Va. 1982). Like Cook, the employee in _Helms Boys_, Larry Brady, was a salesman. Brady resigned from his job selling furniture and appliances when he purchased a donut shop. When Brady later began working for another retail furniture store, his former employer, Helms Boys, Inc., instituted an action to enforce the restrictive covenant. Ultimately, the court held that the restrictive covenant contained in the employment contract between Brady and Helms Boys was not enforceable because Helms Boys did not demonstrate a protectable interest in the nature of a trade secret or customer list. _Id._ Specifically, the court found that Brady had not acquired "any

16

information which might be characterized as confidential or unique to Helms." <u>Id.</u> Cook may have acquired some general skills and information while working for Robinson, but such skills cannot be used to justify a covenant not to compete, particularly a ten-year covenant that precludes Cook from working in any capacity in the automotive sales industry within a fifty-mile radius of Wheeling, West Virginia.

B.    <u>Protectable Interests</u>

Even if this Court were to find that the covenant is reasonable on its face, the covenant must still be held unenforceable because the defendants have failed to show an interest requiring protection. <u>See</u> <u>Reddy</u>, 298 S.E.2d at 920 ("[T]o the extent that the issue of reasonableness is not apparent from the four corners of the contract alone, the burden of demonstrating reasonableness is upon the employer."). An employer may demonstrate a protectable interest by showing

> that his industry operates in such a way that he could be harmed by employees appropriating trade assets, and by particularizing for the court the trade assets susceptible of appropriation by the employee. The employer must show that the employee has acquired a trade asset for which he has not paid, and the employer must further show how the appropriation of this asset by the employee can injure his business. The situations most likely to give rise to such an injury are those where the employer stands to lose his investment in employee training, have his trade secrets or customer lists converted by the employee, or have his market share threatened by the employee's risk-free entry into the employer's market.

Id. at 916. Significantly, the defendants in this case have produced no documents to reflect any sensitive or confidential information which was at any time provided to the plaintiff. United States Magistrate Judge James E. Seibert highlighted this dearth of evidence in his order granting in part and denying in part the plaintiff's motion to compel when he stated that because the defendants cannot produce customer lists, marketing materials, or promotional activities to the plaintiff for discovery purposes, the defendants waived any claim that the plaintiff has valuable knowledge regarding customer lists or marketing strategies that could harm the defendants. This Court reiterated the magistrate judge's finding as to the waiver of certain arguments of the defendants in its memorandum opinion and order affirming as framed the order of the magistrate judge. Certainly, the defendants cannot claim to have a protectable interest in customer lists or strategies that are outdated, useless, or no longer exist. See Welty Dep. 46:9-17 (stating that Welty does not know whether Cook holds any proprietary information that should be protected by Robinson).

In support of their contention that the covenant was required to protect their legitimate business interests, the defendants claim that during his employment, Cook was privy to "various forecasting and operating reports, financial statements, personnel costs, advertising budgets, rent information and leasing lists,

18

inventory information, capitalization information, compensation structure, salary information and pricing structures." Defs.' Mem. in Supp. of Mot. for Summ. J. 9.  Further, the defendants argue that Cook

> learned about structure of the retail business, their
> volume of sales, how much Defendants plan to gross per
> car and confidential salary information.  He became
> familiar with Defendants' overall business model, how
> they approach a customer and structure a purchase and how
> they measure performance against the model, which has not
> changed over the years.

Id.  The defendants assert that Cook was no mere manager, but was a highly-compensated employee who was trained to run the day-to-day operations of the dealerships, and that the confidential information he obtained while performing his job would be very damaging to them in the hands of a competitor such as Straub.  The defendants, however, fail to meet their burden of establishing that their concerns regarding Cook's knowledge of their business rise to the level of protectable interests.[9]

As stated above, any contention that the plaintiff possesses important customer information or marketing strategies has been waived by the defendants.  Further, the argument that a protectable

---

[9]The defendants also argue that Cook possesses knowledge of their "play book," meaning their business model and strategies. According to the defendants, their "play book" warrants protection via a non-compete.  However, as the plaintiff notes, the defendants fail to provide a meaningful definition of the "play book."  The plaintiff also notes that other managers who were privy to the same information as Cook were not subject to a covenant not to compete. Pl.'s Reply to Defs.' Mot. for Summ. J. 3-4.

interest exists due to Cook's interaction with customers is undermined by the fact that in his role as the general sales manager, Cook did not have significant interaction with customers. As the plaintiff points out, when purchasing a vehicle, customers typically work with a sales employee and the finance manager. Pl.'s Mem. in Resp. to Mot. for Summ. J. 14-15. The plaintiff emphasizes that no other employee of the defendants who interfaces with customers has ever been the subject of a covenant not to compete. Id. at 15. Although the defendants claim that the covenant is needed to protect their relationships with their customers, this Court finds that the defendants have failed to show how, if at all, Cook would negatively impact Bob Robinson COC if he were to join Straub. Any future loss of sales of cars and revenues would not necessarily be attributable to Cook's employment with Straub. See Robinson Dep. 114:12-115:14, Aug. 4, 2011 (stating that Robinson cannot quantify how sales and revenues would be impacted if Cook were to work at Straub).

The defendants also argue that Cook's participation in advertising and marketing justifies the ten-year covenant. According to the defendants, Cook "became the 'face' of [the business] by virtue of his daily appearance in local television commercials over the span of his 8 years of employment." Defs.' Mem. in Supp. of Mot. Summ. J. 11. This Court's finds no merit in the defendants' argument that Cook's participation in television

ads supports the imposition of a ten-year covenant not to compete.
The brand promoted by these advertisements was Bob Robinson or Bob
Robinson COC.  Thus, the only name associated with the dealership
is Bob Robinson's.  Although potential customers may recognize Cook
as someone who appeared in an advertisement for Bob Robinson COC,
this association is not confidential or proprietary information
worthy of protection of a ten-year covenant.

C.  <u>Undue Hardship and Injury to Public</u>

Although this Court finds the covenant not to compete
unreasonable on its face, consideration of the final two <u>Reddy</u>
factors also supports this conclusion.  The defendants argue that
the covenant does not impose an undue hardship upon Cook and that
the covenant is not injurious to the public.  This Court disagrees.

> [R]estrictive covenants in employment contracts tend to
> injure the parties making them; diminish their means of
> procuring livelihoods and a competency for their
> families; tempt improvident persons, for the sake of
> present gain, to deprive themselves of the power to make
> future acquisitions, and expose them to imposition and
> oppression; tend to deprive the public of the services of
> men in the employments and capacities in which they may
> be most useful to the community as well as to themselves.

<u>Weaver</u>, 478 S.E.2d at 368 (quoting <u>Barry v. Stanco Communications
Prod., Inc.</u>, 252 S.E.2d 491 (Ga. 1979)) (internal quotations
omitted).  In this case, the covenant not to compete has prevented
Cook from obtaining the general manager job at Straub, which has
caused him financial difficulties.  Further, the covenant's post-
employment restraints injure the public by depriving society of the

economic services offered by the labor of one of its members.  See id. at 367.  For all of the above-described reasons, this Court concludes that the covenant not to compete is unreasonable and cannot be enforced.  Accordingly, the plaintiff's motion for summary judgment must be granted.

D.   Consideration

In addition to the question of enforceability of the covenant, the parties raise the issue of whether consideration was provided for the covenant not to compete.  This Court first notes that in its memorandum opinion and order denying the plaintiff's motion for a preliminary injunction, it stated "that there appears to be additional consideration for the covenant not to compete."  Mem. Op. and Order Denying Mot. for Prelim. Inj. n.5.  The Court based this finding on the July 24, 2006 letter from Robinson, which stated that Cook would be paid an additional $20,000.00 for the covenant not to compete.  Also, the Court considered the fact that the $20,000.00 check paid to Cook is labeled as payment for the covenant not to compete.  However, the parties have not presented any evidence as to the exact amount that Cook received for his shares of stock in RAG, nor have they produced evidence that would enable this Court to determine whether the $20,000.00 was an additional sum paid as consideration for the covenant not to compete, or if it was simply part of the negotiated stock price.

Because the plaintiff has been unable to produce any additional evidence that would support a finding that the covenant fails for lack of consideration, this Court holds that based upon the record, there is consideration for the covenant not to compete. See Defs.' Mot. for Summ. J. Ex. L; Ex. M; Ex. N; Cook Dep. 91:11-22, Sept. 2, 2011. Other than his own testimony, the plaintiff has not provided any proof that he was otherwise owed the $20,000.00 that he received. Moreover, the plaintiff voluntarily accepted and cashed the $20,000.00 check, just as he voluntarily entered into the August 4, 2006 SPA.

E.    Modification of the Covenant

In their motion for summary judgment, the defendants also argue that Robinson did not orally waive or modify the covenant. The defendants' memorandum refers to the conversation between Cook and Robinson on December 7, 2010, during which Cook claims Robinson agreed to waive the covenant so that Cook could work at Straub. Although Cook claims that a waiver occurred, Robinson denies that allegation.

"The burden of proving an oral modification of a written contract is on the party seeking to establish such modification, and such party must demonstrate by clear and positive evidence that the minds of the parties definitely met on the alteration." Bischoff v. Francesca, 56 S.E.2d 865, 866 Syl. pt. 4 (W. Va. 1949). In this case, the plaintiff has failed to prove that a meeting of

the minds regarding the modification of the covenant occurred. Regarding the question of whether the covenant was modified or waived during the telephone conversation on December 7, 2010, it is Cook's word against Robinson's. There is no other evidence in the record that can positively prove that the covenant was either modified or waived. Further, the August 4, 2006 SPA signed by Cook provides: "No change, modification, amendment or addition will be valid unless it is in writing and signed by the party against whom enforcement of any change, modification, amendment or addition is assigned." Defs.' Mot. for Summ. J. Ex. M. Therefore, despite the parties' respective positions regarding whether any oral modification or waiver took place, the August 4, 2006 SPA and the covenant could not have been modified without a written, signed agreement. For these reasons, this Court finds that the defendants' motion for summary judgment must be granted as to the claim of oral modification or waiver of the covenant.

F.   <u>Detrimental Reliance and Estoppel</u>[10]

According to the defendants, the plaintiff's detrimental reliance and estoppel claims must fail because they are premised upon Robinson's alleged oral waiver of the covenant, and no such oral waiver occurred.   In response, the plaintiff contends that if his version of the conversations of December 6-7, 2010 are accepted, the defendants are estopped from enforcing the covenant because Robinson's oral waiver of the covenant caused him to quit is job at Smail.   Again, there is no evidence in the record definitively proving that the covenant was modified or waived during the telephone conversation of December 6, 2010.   However, because this Court finds that the covenant not to compete is unenforceable, the detrimental reliance/estoppel claim is now moot. In his complaint, the plaintiff argues that the doctrines of detrimental reliance and/or estoppel bar the defendants from asserting the enforcement of the covenant not to compete.   Compl. ¶ 53.   Because the covenant not to compete does not pass judicial

---

[10]In their motion for summary judgment, the defendants also argue that the plaintiff's detrimental reliance/estoppel claim must fail because Cook previously admitted under oath at his unemployment compensation hearing that he quit his job with Smail on December 7, 2010, <u>after</u> he knew the covenant would be enforced and that he would not be released to work at Straub.   In response, the plaintiff argues that the date he provided at the unemployment hearing was incorrect and that he actually resigned from his position at Smail on December 6, 2010.   Because this Court holds that the covenant not to compete is unenforceable, there is no need to further analyze this discrepancy in the date of Cook's resignation from Smail.

scrutiny, these doctrines are not needed to bar the defendants from asserting the enforcement of the covenant.

G. <u>Tortious Interference</u>

In arguing that summary judgment is warranted as to the plaintiff's tortious interference claim, the defendants assume that the covenant not to compete is enforceable. They acknowledge that a tortious interference claim can only succeed if the covenant not to compete is found to be unenforceable. Because this Court finds the covenant not to compete to be unenforceable, the plaintiff's tortious interference claim must be permitted to proceed. <u>See</u> <u>Voorhees</u>, 446 S.E.2d at 675 (stating the elements that the plaintiff must show to establish prima facie proof of tortious inference). The court in <u>Voorhees</u> also explained that when a former employer intentionally contacts the prospective employer and threatens to involve the new employer in a lawsuit if the terms of the purportedly enforceable covenant not to compete are violated, and that threat caused the former employee to lose his new job, malice is inferred from this action and punitive damages are to be properly considered by the jury. <u>Id.</u> at 678. Accordingly, the defendants' motion for summary judgment must be denied as to the claim of tortious interference and the claim for punitive damages.

V. <u>Conclusion</u>

For the reasons stated above, the plaintiff's motion for summary judgment is GRANTED. The defendants' motion for summary

judgment is GRANTED IN PART and DENIED IN PART.  Specifically, the defendants' motion for summary judgment is GRANTED as to the claim of oral modification or waiver of the covenant.  The defendants' motion for summary judgment is DENIED as to the claim of tortious interference with a contract and the claim for punitive damages. Because this Court finds the covenant not to compete unenforceable, the plaintiff's tortious interference claim, the claim for damages on the declaratory judgment action, and the claim for punitive damages survive summary judgment.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    October 4, 2011


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE